UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN PIERCE,<br><br>              Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>              Defendant. | Case No.: 1:14-cv-01687-BAM<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

### **INTRODUCTION**

Plaintiff Steven Pierce ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.

The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

///

///

1

**FACTS AND PRIOR PROCEEDINGS**

On February 22, 2011, Plaintiff protectively filed his application for supplemental security income. AR 17, 120-26.[1] Plaintiff alleged that he became disabled on December 1, 2009. AR 120. Plaintiff's application was denied initially and on reconsideration. AR 72-76, 79-81. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ Timothy S. Snelling held a hearing on November 8, 2012, and issued an order denying benefits on November 30, 2012. AR 17-27. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-4, 15-16. This appeal followed.

**Hearing Testimony**

The ALJ held a hearing on November 8, 2012, in Stockton, California. AR 32-58. Plaintiff appeared and testified. He was represented by attorney Dennis Evans. AR 34. Impartial Vocational Expert ("VE") Jeff Clark also testified. AR 53.

At the time of the hearing, Plaintiff was 51 years old with an eleventh grade education. AR 38. Plaintiff testified that he worked as a care provider from January 2007 through December 2009. AR 38. In 1998, he also worked providing in-home support service to a friend, the mother of his children. He would help cook and assist with bathing and groceries. AR 39-40. In 2002, Plaintiff drove a forklift in a warehouse eight hours a day, forty hours a week. AR 41-42. Plaintiff stopped working there because the job moved out of town. AR 42-43. In 2010, Plaintiff earned a little over $2,000 providing in-home support services for a couple of months. AR 43-44. Plaintiff was let go because they ran his record and found out that he had a violent crime. AR 44.

Plaintiff testified that he suffered a gunshot wound in 1999, and the bullet is still lodged near his spine in the middle of his back. Plaintiff attributes his chronic back pain to the bullet. AR 45. He gets relief from the pain by moving and taking his medications. He takes pharmaceutical strength pain killers, but only took ibuprofen before the hearing. If he took Vicodin, then he would be out of it. He takes Vicodin four times a day because he needs it. His ibuprofen also is prescription strength at 600 milligrams. AR 46-47.

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

1    Plaintiff testified that he has had a walker for over a year.  It was prescribed by his primary
2 care physician, Dr. Glen Villanueva, and covered by insurance.  AR 47.  Plaintiff testified that he is
3 able to use public transportation.  He does not own a car and does not have a valid driver's license.
4 AR 48-49.  Plaintiff had a DUI and his license was suspended.  If he had a driver's license and a car,
5 he would be able to drive.  AR 49.
6    Plaintiff also testified that he lives with the mother of his children, but his children do not live
7 with them.  AR 49.  With regard to household chores, Plaintiff reported that he cooks, but his daughter
8 washes dishes, does laundry, sweeps, mops, vacuums and dusts.  Plaintiff does not go to church, but
9 visits family or friends.  When he hangs out with his friends, they go to the park and talk.  AR 50-51.
10    Plaintiff has a computer at home.  He does not have Facebook, but he works on the computer a
11 lot.  He gets some of his news and information from the computer.  Plaintiff also likes to read and
12 watches a lot of TV.  AR 51.
13    When asked about his sleep, Plaintiff testified that he could only sleep on his right side because
14 of pain.  Plaintiff reported that in the last six months or so, he asked a doctor about surgical removal of
15 the bullet.  He was told that a lot of people have to live with it and the safe thing to do is leave it alone
16 because surgery is risky.  AR 52-53.
17    Following Plaintiff's testimony, the ALJ elicited testimony from the vocational expert ("VE")
18 Jeff Clark.  AR 53.  The VE testified that Plaintiff's past work was classified as home attendant and
19 warehouse worker.   AR 53-54.  The ALJ then asked the VE hypothetical questions.  In his first
20 hypothetical, the ALJ asked the VE to assume an individual restricted to light work with no climbing
21 of ladders, ropes or scaffolding and occasional stooping, crouching and kneeling.  The VE testified
22 that this hypothetical individual would not be able to perform Plaintiff's past work.  AR 54.  The ALJ
23 asked the VE to further assume that this individual was between 49 and 51 years, with an eleventh
24 grade education and Plaintiff's past work experience.  The VE testified that there were no transferable
25 skills from Plaintiff's past work.  However, the VE indicated that this individual could perform about
26 90 percent of the light jobs listed in the Dictionary of Occupational Titles and about 99.9 percent of
27 the sedentary jobs.  AR 54-55.  If the person were restricted to no more than two hours of walking,
28 two hours of standing and three hours of sitting in an eight-hour day, this would eliminate the

occupational job base and the person would not be competitively employable. AR 55. In response to questioning from Plaintiff's counsel, the VE testified that there were no transferrable skills from the home attendant position to sedentary jobs. AR 55-56.

**Medical Record**

The entire medical record was reviewed by the Court. AR 202-454. The relevant medical evidence is summarized here or referenced below as necessary to this Court's decision.

On May 26, 2010, Plaintiff complained of chronic back pain and left knee pain. He was prescribed 20 Vicodin with no refills. AR 277-78.

On July 15, 2010, Plaintiff sought treatment for chronic upper and lower back pain. He was prescribed Naprosyn. AR 227.

On December 5, 2010, Plaintiff complained of chronic back pain, noting that he had run out of pain medication. He was prescribed Vicodin and Ibuprofen. AR 374-77.

On February 3, 2011, Plaintiff complained of middle back pain. He was to continue Naprosyn and Baclofen. AR 226.

On March 1, 2011, Plaintiff sought Emergency Room treatment for his mid-back pain secondary to an old gunshot wound. Plaintiff reported that he had chronic rib pain from the injury, but it was usually controlled with Naproxen and precautionary movements. Plaintiff now had pain in his chest. On physical exam, Plaintiff had a normal gait. AR 241-42. A CT of Plaintiff's chest identified a dominant bullet fragment lodged adjacent to the right main bronchus. AR 242. Plaintiff likely did not need emergency removal and there was no surgical intervention. AR 243. The examining physician recommended stretching, warm compresses, and continuing Naproxen and Motrin as needed. Plaintiff also was prescribed a trial of Flexeril to see if the muscle relaxant helped with pain. AR 434-35.

On April 22, 2011, Plaintiff underwent a physical therapy evaluation for back pain. Plaintiff was noted to use a motorized scooter. AR 207. Plaintiff attended physical therapy from April through July 2011. AR 207-09.

On May 17, 2011, Plaintiff sought Emergency Room treatment for pain and swelling to his right leg/knee. On physical examination, Plaintiff's right knee had no ligamentous laxity, no effusion

and he had negative Lochman and McMurray tests. A scan of Plaintiff's knee showed the presence of a synovial cyst. Plaintiff was diagnosed with knee sprain and Baker cyst. AR 239. A nurse provided an ace wrap, cane and Vicodin. AR 240.

On May 23, 2011, Plaintiff sought Emergency Room treatment for complaints of right knee pain. Plaintiff's gait was steady with a slight limp on right leg. He was prescribed medications. AR 352-54.

On June 6, 2011, Plaintiff reported riding his bike from Ceres to therapy and was very sore. AR 209.

On June 21, 2011, Dr. Miguel Hernandez completed a consultative internal medicine evaluation. AR 202-05. Plaintiff complained of mid back pain with a history of being status post gunshot wound. Plaintiff reported activities of daily living to include dressing and bathing himself. A friend helps him dress and do some of the activities that are more difficult, especially those requiring reaching down to the ground. On physical examination, Plaintiff was in no apparent distress, but walked cautiously and slowly with a cane. He had limited range of motion in the thoracic and lumbar spine. Plaintiff also had decent generalized muscle tone throughout both the upper and lower extremities bilaterally and his motor strength was 5/5 throughout. On grip strength testing using the Jamar Dynamometer, Plaintiff was able to achieve about 40 pounds of pressure bilaterally, but Dr. Hernandez questioned Plaintiff's "sincere intent." AR 205. Dr. Hernandez opined that Plaintiff could stand and walk for up to six hours during an eight-hour workday and sit for up to six-hours in an eight-hour workday. Plaintiff's use of a cane was "fine for some stability, long distances, and over uneven terrain." AR 205. Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently. He had occasional postural limitations on bending and twisting of the thoracic spine due to the gunshot wound. Plaintiff had no manipulative or environmental limitations. AR 205.

On July 7, 2011, a physical therapy treatment summary noted that Plaintiff had an antalgic gait. He was discontinued from therapy because he had achieved maximal benefit. AR 209-10.

In July 2011, Plaintiff requested a prescription for a walker. Plaintiff complained of knee pain and reported that it was painful to walk. An orthopedic referral was made and Plaintiff was prescribed a front wheel walker. AR 224.

On July 25, 2011, Dr. Charles Fina, a state agency physician, opined that Plaintiff was objectively not severe enough to be considered disabled. AR 64-67.

On August 11, 2011, Plaintiff sought Emergency Room treatment for chronic knee pain. On physical exam, Plaintiff's gait was normal. AR 237. Plaintiff was prescribed Naprosyn along with 15 Vicodin tablets. AR 237-38, 422-23.

X-rays of Plaintiff's left and right knees on October 24, 2011, showed no acute osseous or joint space abnormality. AR 228.

On September 21, 2011, Plaintiff sought Emergency Room treatment for chronic back pain. He reported that Naproxen was providing no relief. On physical exam, Plaintiff's gait was normal. AR 235-36. A CT noted a dominant bullet fragment lodged adjacent to the right main bronchus. AR 420.

On October 25, 2011, Plaintiff sought treatment for pain in his upper back and reported that his meds were not helping. He was to add Neurontin. AR 223.

On November 14, 2011, Plaintiff sought a medication refill of Vicodin for his chronic back pain. After Plaintiff self-reported that his cane was stolen, an Emergency Room nurse provided Plaintiff with a cane. AR 231. However, on physical examination, Plaintiff's gait was normal. AR 230.

A MRI of Plaintiff's right knee on January 13, 2012, revealed a parrot's beak tear of the posterior horn of the medial meniscus extending into the posterior body, grade IV chondromalacia patellae, small joint effusion, and small Baker's cyst without signs of cyst rupture. AR 326.

On March 1, 2012, Dr. Stephen Barrien opined that Plaintiff needed arthroscopic partial medial meniscectomy and then chondroplasty of his patellofemoral joint. AR 319-20.

On March 8, 2012, Dr. Sharon Keith, a state agency medical consultant, affirmed the non-severe findings of Dr. Fina dated July 25, 2011. AR 257-260.

On April 13, 2012, Plaintiff underwent arthroscopic surgery on his right knee. Following surgery, Plaintiff was to have crutches "for a while." AR 299.

On April 15, 2012, Plaintiff sought emergency room treatment for acute knee pain from arthroscopy. He was prescribed pain medication and provided with a splint and crutches. AR 341-43.

On April 30, 2012, Plaintiff sought follow up treatment regarding his right knee in the orthopedic clinic. Dr. Robert Canon, the treating physician, opined that Plaintiff's range of motion was improving and his pain had decreased. Plaintiff was to begin slow, progressive physical therapy and "may slowly get rid of the cane, if … able." AR 292. Dr. Canon indicated that Plaintiff could not work for a period of two months. AR 292.

On May 10, 2012, Plaintiff was evaluated for physical therapy of his right knee. Plaintiff was noted to be using an electric scooter. AR 407-08. Plaintiff attended physical therapy twelve times between May 10, 2012 and August 14, 2012. During that period, he also had eleven no shows or cancellations. AR 408-410, 412.

On June 29, 2012, Plaintiff reported that he was still having discomfort in his right knee and was using a scooter. AR 409.

On July 17, 2012, Plaintiff sought follow-up treatment for knee and back pain. Plaintiff was to continue physical therapy and was prescribed a cane. AR 268-70.

On August 21, 2012, Dr. Glen Villanueva reported that Plaintiff had been his patient since January 2009, and had been seen for upper back pain, knee pain and hypertension. Dr. Villanueva indicated that Plaintiff had severe right sided knee pain for which he had surgery with Dr. Berrien. Plaintiff had been referred to physical therapy and had been compliant with those visits. AR 448. On the same date, Plaintiff requested a referral for physical therapy to address his back pain, noting it had helped before. AR 451. Plaintiff's current medications included Naproxen, Ibuprofen and Vicodin. AR 453.

On November 29, 2012, Plaintiff sought follow-up treatment for upper back pain. He was prescribed a refill of Ibuprofen. AR 449.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled. AR 20-27. More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 22, 2011, his application date. AR 22. Further, the ALJ identified a history of gunshot wound in 1999 with residual mid-back pain and decreased range of motion, gastroesophageal reflux disease, hypertension, right knee pain status post-

7

surgery in April 2012, and degenerative joint disease of the left knee as severe impairments. AR 22. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or medically equal the severity of any of the listed impairments. AR 22.

Based on his review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a wide range of light work. Plaintiff could sit about six hours in an eight-hour work day, stand and walk about six hours in an eight-hour work day, and lift and carry twenty pounds occasionally and ten pounds frequently. He could not climb ladders, rope or scaffolding and he could perform no more than occasional stooping, crouching and kneeling. AR 22-26. The ALJ found that Plaintiff could not perform any past relevant work, but there were other jobs in the national economy that Plaintiff could perform. AR 26-27. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 27.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commission's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

///

///

# REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In his opening brief, Plaintiff contends that the ALJ erred by (1) failing to provide legally sufficient reasons for rejecting the limitations requiring an assistive device and (2) failing to provide legally sufficient reasons for finding Plaintiff not fully credible.

# DISCUSSION[2]

### 1. Assistive Device

SSR 96-9p provides that "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case." SSR 96-9p, 1996 WL 374185, at *7; *see also Flores v. Colvin*, No. 1:14-cv-02096-SKO, 2016 WL 2743228, at *14 (E.D. Cal. May 11, 2016) (discussing SSR 96-9p).

Here, Plaintiff argues that the ALJ improperly rejected record evidence that Plaintiff was prescribed a cane by his treating doctor. Doc. 17 at pp. 8-9. Although the Commissioner contends that the record does not adequately demonstrate that a physician prescribed Plaintiff a cane, there is

---

[2] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

record evidence that Plaintiff was prescribed a front wheel walker on July 17, 2011, and a cane in July 2012. AR 268 AR 224.

Nonetheless, as argued by the Commissioner, the record is devoid of evidence that a cane was medically necessary, and the record supports the ALJ's determination that Plaintiff did not need a walker or cane for ambulation. AR 24. At the most basic level, there is no treating physician opinion indicating that a cane or walker was medically necessary. Further, the ALJ considered that after Plaintiff requested a walker in July 2011, medical records from August, September and November 2011 showed that Plaintiff walked with a normal gait. AR 24, 230, 235-36, 237. The ALJ reasonably concluded that this contradictory evidence "strongly suggest[ed] that the claimant did not require the use of an assistive device." AR 23. The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004)

Plaintiff argues that the ALJ erred by citing isolated instances of improvement, noting that Plaintiff's knee impairment later became severe enough to require surgery in April 2012. Doc. 21 at p. 10. In this instance, the ALJ acknowledged the worsening of Plaintiff's right knee symptoms and subsequent surgery. AR 24. However, the record supports the ALJ's determination that following surgery, Plaintiff's knee symptoms "significantly improved by August 2012." AR 24. As noted by the ALJ, a follow-up examination on April 30, 2012, revealed improved range of motion and decreased pain. AR 24, 292. By July 11, 2012, Plaintiff reported that he was "doing good" with no complaints. AR 409. Although Plaintiff was prescribed a cane on July 17, 2012, by August 2012 his only complaint was of back pain. AR 268, 412, 449, 452-54.

Plaintiff also argues that the ALJ failed to provide legally sufficient reasons for rejecting Dr. Hernandez's opinion, rendered in June 2011, that Plaintiff needed an assistive device. As the Commissioner points out, Dr. Hernandez did not expressly opine that Plaintiff's use of an assistive device was medically necessary. Instead, Dr. Hernandez noted that Plaintiff was using a cane and that it was "*fine* for some stability, long distances, and over uneven terrain." AR 205 (emphasis added). Dr. Hernandez's statement is neither an unambiguous medical opinion that Plaintiff needed a cane for stability, long distances or uneven terrain, nor a concrete statement of any functional limitations. *See*

10

*Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("An ALJ may rationally rely on specific imperatives regarding a claimant's limitations, rather than recommendations.").

Moreover, the ALJ properly discounted Dr. Hernandez's opinion regarding the use of an assistive device. First, the ALJ gave Dr. Hernandez's opinion regarding the use of cane reduced weight because it was "inconsistent with treatment notes showing the claimant walked with a normal gait despite allegations that he required a walker or cane." AR 25. An ALJ properly may discount a physician's opinion that is unsupported by the record or by objective medical findings. *See Batson*, 359 F.3d at 1195. As discussed above, the ALJ considered medical evidence in the time period shortly after Dr. Hernandez's consultative evaluation demonstrating that Plaintiff walked with a normal gait. AR 24, 230, 235-36, 237.

Second, the ALJ gave significant weight to that portion of Dr. Hernandez's opinion indicating that Plaintiff could stand and walk up to six hours in an eight-hour workday. AR 25. As written, Dr. Hernandez's opinion does not state or suggest that Plaintiff required a cane to stand and walk up to six hours in an eight-hour-day. As the ALJ recognized, there were inconsistencies within Dr. Hernandez's opinion, and this was a specific and legitimate reason for rejecting any medical need for a cane. *See*, *e.g.*, *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (contradiction in physician's opinion was a specific and legitimate reason for rejecting the opinion); 20 C.F.R. § 416.929(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence.").

For these reasons, the Court concludes that the ALJ's determination that Plaintiff did not require the use of an assistive device for ambulation is supported by substantial evidence and free of legal error.

**2. Credibility**

In deciding whether to admit a claimant's subjective complaints of pain, the ALJ must engage in a two-step analysis. *Batson*, 359 F.3d at 1196. First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes

specific findings and provides clear and convincing reasons for doing so. *Id.* The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence."). Factors an ALJ may consider include: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

At the first step of the analysis, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 24. At the second step, however, the ALJ found that Plaintiff's statements about the intensity, persistence and limiting effects of his symptoms were not entirely credible. In so doing, the ALJ provided clear and convincing reasons for finding Plaintiff not fully credible. AR 24.

Initially, the ALJ properly determined that the medical record did not support Plaintiff's allegations that he required a cane or walker for ambulation. An ALJ is entitled to consider whether there is a lack of medical evidence to corroborate a claimant's alleged symptoms so long as it is not the only reason for discounting a claimant's credibility. *Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005); *Batson*, 359 F.3d at 1196-97 (ALJ properly relied on objective medical evidence and medical opinions in determining credibility). As discussed above, the ALJ considered treatment notes indicating Plaintiff was able to walk with a normal gait. AR 24. The ALJ also considered record evidence that Plaintiff's right knee symptoms improved with surgery. AR 25. Further, there were no medical opinions from Plaintiff's treating physicians indicating that a cane was medically necessary.

Similarly, the ALJ properly determined that the medical record did not support Plaintiff's allegations of disabling bilateral knee pain. AR 25. In addition to considering improvement to Plaintiff's right knee following surgery, the ALJ also considered image studies of Plaintiff's left knee that were unremarkable. AR 25, 228.

Additionally, the ALJ properly considered that treatment for Plaintiff's allegedly disabling back impairment had been essentially routine and conservative in nature. AR 25. Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of an impairment. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (response to conservative treatment, which included physical therapy and use the anti-inflammatory medication, a TENS unit and lumbosacral corset, undermined claimant's reports regarding disabling nature of pain); *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Here, the record reflects that Plaintiff's back pain generally was treated conservatively with medication and physical therapy (AR 207-10 (physical therapy), 223 (treatment with Neurontin and Vicodin), 226 (treatment with Baclofen), 227 (Naprosyn), 230-31 (treatment with Vicodin), 235-38 (treatment with Naproxen and Vicodin), 243 (Baclofen and Vicodin), 284 (Ibuprofen), 334 (Neurontin), 356 (Vicodin), 434-35 (Naproxen and Motrin), 449 (Ibuprofen)). Although some courts have found that treatment with Vicodin cannot be considered conservative, *see*, *e.g.*, *Baylis v. Colvin*, 2016 WL 3031776, *5 (C.D. Cal. May 25, 2016), *Cortes v. Colvin*, 2016 WL 1192638, *4 (C.D. Cal. Mar. 28, 2016), the Court declines to follow those cases given that Plaintiff also was being treated for intermittent knee pain and there is no medical evidence of any side effects from the medication. *Medina v. Colvin*, 2016 WL 633857, *5 (C.D. Cal. Feb. 17, 2016) (declining to follow cases finding treatment with Vicodin not to be conservative when nothing in the record indicted that plaintiff had any side effects from the drugs); *Lott v. Colvin*, 2015 WL 1738430, *8 (N.D. Cal. Apr. 10, 2015) (treatment with Vicodin likened to conservative or routine care given that plaintiff had not alleged that the medication side effects incapacitated her); *Medel v. Colvin*, 2014 WL 6065898, *8 (C.D. Cal. Nov. 13, 2014) (ALJ permissibly discounted plaintiff's credibility based on conservative treatment where treatment records showed that since alleged disability onset date, plaintiff was prescribed only Vicodin and Tylenol for his allegedly debilitating low-back pain). While Plaintiff argues, in part, that his treatment was not conservative because surgeons felt the risks of surgery outweighed the benefit, this is not supported by the record. Rather, the evidence cited by Plaintiff indicates that he likely did not need *emergency* surgery to remove the bullet fragment from an old gunshot wound. AR 428-29.

///

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Steven Pierce.

IT IS SO ORDERED.

Dated:   **June 19, 2016**                         /s/ Barbara A. McAuliffe
                                                    UNITED STATES MAGISTRATE JUDGE